PERKINS (DODGE v.). See Case No. 3,954.
PERKINS (DUNNING v.). See Case No. 4,180.

## Case No. 10,986.

### PERKINS v. HILL.

[1 Spr. 123.] [1]

District Court, D. Massachusetts. Feb., 1846.[2]

CHARTER PARTY — SHIPMENT BY THIRD PARTY — BILL OF LADING—AFFREIGHTMENT.

Where a vessel was chartered at $400 a month, for a voyage from Boston to Cuba and back, payable in three days after her return, and a person other than the charterer shipped a part of the outward cargo, and took a bill of lading, signed by the master, in the usual form, adding, "as per charter-party,"—the master being ignorant of any arrangement between the shipper and the charterer,—*held*, that the shipper was liable to pay a reasonable freight for his goods, in three days after the return of the vessel.

[Cited in The Eliza, Case No. 4,347; Snow v. Edwards, Id. 13,145; The Peer of the Realm, 19 Fed. 217; The Chadwicke, 29 Fed. 524.]

This was a libel in personam, promoted by George Perkins, Jr., claiming freight for certain merchandize belonging to the respondent [John S. Hill], on a voyage from Boston to Havana, on board the schooner Austin, of which the libellant was master and part owner.

It appeared that the Austin was chartered at $400 a month by one Joseph Green, for a voyage to Cuba and back, payable in three days after her return; that he and the respondent, Hill, put a cargo on board; that this cargo was consigned to Hill's consignee in Havana, and that a bill of lading was signed by Perkins to Hill, declaring freight payable "as per charter-party;" and making all freights due, on the voyage home, payable to the mas-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 10,987.]

ter, on account of the amount due from Green on the charter-party. The goods, on arrival in Boston, were delivered to, and received by the respondent.

C. P. & B. R. Curtis, for libellant.
Edward Blake, for respondent.

SPRAGUE, District Judge. The question is, whether the owners of this vessel can hold the respondent, Hill, personally liable for the freight of the goods shipped by him, or whether they are to look to the charterer alone.

Perkins and his associates, undoubtedly continued the owners for the voyage. The Volunteer [Case No. 16,991]. Green, the charterer, might have put these goods on board, and the libellant must have conveyed them, by virtue of the charter-party, with no other security than the personal covenants of Green, and a lien on the homeward cargo. But Green did not see fit to put these goods on board, but permitted the respondent to lade them, in his own name, and as his own property, under a contract between him and the libellant. That contract is shown by the bill of lading, and by it, Hill obtained the personal responsibility of the owner, as carrier, and the liability of the ship (The Rebecca [Id. 11,619]); and the owner, by its express terms, was to be paid freight, as per charter-party. The language is, that the goods are to be delivered to the consignees, naming them, he or they paying freight; and then it is added, "as per charter-party." What would have been the obligation, if the last three words, "as per charter-party," had not been added? The respondent being the owner of the goods, and the consignees merely his agents, having a right to call upon him to pay whatever freight they should advance, the respondent would be personally liable to the carrier for the freight; and no rate being specified in the contract, the law determines that it shall be a reasonable rate.

What then is to be the effect of the words "as per charter-party"? That instrument provides for no rate of freight on goods transported, but that $400 a month for the use of the vessel shall be paid, in three days after her return to Boston. How then is the freight to be paid, as per charter-party? It cannot be supposed that it was the intention of the parties, that the whole hire of the ship, under the charter-party, was to be paid for the mere transportation of the small part of the outward cargo; and some effect is to be given to this clause in the bill of lading. The fair and rational construction is, that a reasonable freight for the transportation of the goods named in the bill of lading, should be paid, and the payment be made as per charter-party; that is, in three days after the arrival of the vessel in Boston.

This was the obligation which the respondent assumed, when he took the bill of lading from the libellant, and no arrangement between him and Green, without the knowledge

of the libellant, can exonerate him from its performance.

This case is very similar to that of Churchill v. Churchill [unreported], decided in this court; the only material difference being, that in that case, the bill of lading declared, that the goods were to be delivered to the consignee, or assigns, he or they paying freight, sixty cents per quintal, to the owner or his agent, at Boston.

The respondent contends, that while the bill of lading binds the owner of the ship to the safe transportation and delivery of the goods, it imposes no obligation whatever upon the shipper; that the clause as to the payment of freight, instead of meaning that payment should be made to the carrier by the shipper, or his consignee, for the transportation of these goods, has no meaning or effect. To this I cannot accede.

Subsequently the respondent made a motion for a re-hearing, which was granted by the court. He then introduced new and material evidence, which so changed the facts of the case, that the libel was dismissed. This decree was affirmed upon appeal    [Case No. 10,987].